952 F.2d 398
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, HEALTH CARE
FINANCING ADMINISTRATION, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO (AFGE),
Intervenor.
U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, HEALTH CARE
FINANCING ADMINISTRATION, Respondent,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
American Federation of Government Employees, AFL-CIO (AFGE),
Intervenor.
 Nos. 91-1068, 91-1120.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided Dec. 26, 1991.
As Amended Jan. 7, 1992.
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the Federal Relations Authority. (3-CA-80303).
 Argued: Robert David Kamenshine, Civil Division, United States Department of Justice, Washington, D.C., for petitioner; James Frederick Blandford, Federal Labor Relations Authority, Washington, D.C., for respondent.
 On Briefs: Stuart M. Gerson, Assistant Attorney General, William Kanter, Civil Division, United States Department of Justice, Washington, D.C., for petitioner; William E. Persina, Solicitor, William R. Tobey, Deputy Solicitor, Arthur A. Horowitz, Associate Solicitor, Federal Labor Relations Authority, Washington, D.C., for respondent.
 
 FLRB
 
 1
 ENFORCED.
 
 
 2
 Before MURNAGHAN and WILKINSON, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 3
 The Health Care Financing Administration appeals a decision of the Federal Labor Relations Board which held that the Administration committed unfair labor practices when it unilaterally implemented a total ban on smoking in its facilities in violation of an existing Memorandum of Understanding. 5 U.S.C. § 7116(a)(1), (5), (6), and (7). Because the Memorandum of Understanding called for further negotiations between the union and the agency before implementation of any permanent smoking policy, and did not permit unilateral agency action, we affirm.
 
 BACKGROUND
 
 4
 This case arises out of an unfair labor practice dispute between the Health Care Financing Administration (HCFA) and the American Federation of Government Employees, AFL-CIO (union). On November 21, 1986, the HCFA and the union reached an agreement on a smoking policy, and executed a Memorandum of Understanding (MOU). The MOU provided:
 
 
 5
 [T]he [agency] and the union hereby agree to the following policy:
 
 
 6
 ....
 
 
 7
 Beginning immediately and over the coming months, the [agency] and the union agree to initiate specific efforts designed to provide a total smoke-free environment in all HCFA-occupied buildings.
 
 
 8
 As a[n] interim policy, smoking in HCFA-designated buildings will be limited to those areas specifically identified as "Designated Smoking Areas."
 
 
 9
 ....
 
 
 10
 The parties agree that 12 months from the date of this Agreement, either party with a 15-day written advance notice may reopen this Agreement.
 
 
 11
 This policy shall become effective 90 days after the signature of both parties to this agreement, and may be changed/modified only by mutual consent....
 
 
 12
 The MOU was incorporated into, and became subject to the terms of the parties' Master Agreement. Designated smoking areas were established, and the interim smoking policy, set forth in the MOU, went into effect in February, 1987. Thereafter, HCFA exercised its option to reopen the agreement.
 
 
 13
 At the second round of negotiations over the smoking policy, the HCFA's chief negotiator, Ms. Marie Dulaney, indicated that, to reach agreement to end smoking on a date certain, she was willing to discuss other unrelated matters of importance to the union (a "wish list").[1] The HCFA presented a proposal which called for a total ban on smoking by January 1, 1988.
 
 
 14
 Bargaining over the smoking policy continued in December, 1987, and January and February, 1988. In January, Federal Mediator Leo Gant of the Federal Mediation and Conciliation Service (FMCS) was called in to assist with the bargaining. On March 8, 1988, Gant declared the parties at an impasse. Both parties indicated their intent to submit a request for assistance to the Federal Service Impasses Panel (FSIP). In fact, the union prepared a request for panel services and served HCFA with a copy on the same day that Gant rendered his decision.
 
 
 15
 By memorandum to all employees dated March 9, 1988, the HCFA announced that, effective March 15th, a total ban on smoking would be in place in all HCFA occupied buildings, and that the designated smoking areas would be "permanently" closed on that date. The smoking ban went into effect as planned on March 15, 1988.
 
 
 16
 The HCFA did not indicate at the March 8 meeting that it planned to take unilateral action; nor did it notify the union once such action had been taken. The union discovered the ban from employees who complained about the closure of the designated smoking areas and filed unfair labor practice charges on March 11, 1988.
 
 PROCEEDINGS BELOW
 
 17
 The ALJ found that HCFA's implementation of a total ban on smoking constituted a repudiation of the MOU, and violated sections 7116(a)(1), and (5) of the Federal Service Labor-Management Relations Statute.[2] The ALJ noted that the MOU did not include a specific date for a ban on smoking; but merely allowed either party to reopen the MOU for further negotiations at a later date. The ALJ noted that by soliciting a "wish list" from the union, HCFA had recognized its obligation to bargain and found HCFA guilty of several unfair labor practices.[3] The Authority affirmed the ALJ, and denied HCFA's request for reconsideration.
 
 STANDARD OF REVIEW
 
 18
 The findings of an agency with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, are conclusive. 5 U.S.C. § 7123. As to an agency's legal conclusions, the reviewing court must decide whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Unless it appears from the Statute, or its legislative history, that an agency's construction of its enabling act would not have been sanctioned by Congress, the construction will be upheld. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). See also Fort Stewart Schools v. FLRA, 110 S.Ct. 2043, 2046 (1990).
 
 
 19
 No special deference is given to ultimate legal conclusions that rest on the Board's interpretation of a collective bargaining contract. See Local Union No. 47, International Brotherhood v. NLRB, 927 F.2d 635, 640-641 (D.C.Cir.1991), and authorities cited therein. Thus, a de novo standard of review is applied when interpreting the contract itself.
 
 DISCUSSION
 
 20
 On appeal, Petitioners raise two issues. First, Petitioners argue that the decision to unilaterally implement the smoking-ban was based on a reasonable reading of the Memorandum of Understanding. Second, Petitioners contend that this case is merely a dispute over an arguable interpretation of a contract provision, which should have been decided through the contract's grievance and arbitration procedures, rather than through an unfair labor practice proceeding. Because the Memorandum of Understanding cannot reasonably be read to permit HCFA to unilaterally implement a smoking-ban, we affirm the Authority's decision without reaching the second issue.
 
 
 21
 According to Petitioner, HCFA and the union agreed that:
 
 
 22
 "acting alone HCFA could initiate 'a total smoke free environment,' with the provision of designated smoking areas to be only an 'interim policy' pending 'specific efforts designed to provide [such] environment.' "
 
 
 23
 Petitioner read the contract as requiring further bargaining only as to the "impact and implementation" of the smoke-free environment. When the union advanced its "wish list" of items during negotiations, HCFA believed that the union had waived its right to negotiate over impact and implementation and created a smoke-free environment.
 
 
 24
 Petitioner's interpretation is not a reasonable construction of the MOU. A well settled legal principle is that the words of a contract are to be accorded their plain and ordinary meanings. In the Memorandum of Understanding, HCFA and the union agreed that "[b]eginning immediately and over the coming months, [HCFA and the union would] initiate specific efforts designed to provide a smoke free environment in all HCFA-occupied buildings." The Memorandum provided that "[twelve] months from the date of [the MOU], either party [ ] may reopen this Agreement."
 
 
 25
 The Memorandum also provided for an interim policy under which management would designate limited smoking areas in each building and provided that after three months "the adequacy and appropriateness of these limited designated smoking areas will be assessed and any changes shall be subject to further negotiations upon the request of either party." (Emphasis supplied.) Based on the plain language of the MOU, we find that the agreement did not authorize HCFA to unilaterally implement a smoking-ban in its facilities.[4]
 
 
 26
 Accordingly, the decision of the Federal Labor Relations Board is
 
 
 27
 ENFORCED.
 
 
 
 [1]
 Ms. Dulaney is the Deputy Director of the Office of Management and Budget. She explained to Philip Otto and Joseph Flynn, the union negotiators, that she was a high level agency official, and that the objective was to reach an agreement with the Union on a date to end smoking
 
 
 [2]
 Section 7116 provides:
 (a) For the purpose of this chapter, it shall be an unfair labor practice for an agency--
 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;
 ....
 (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter....
 (6) to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter....
 
 
 [3]
 The ALJ also found that HCFA violated section 7116(a)(1), (6) and (7) of the Statute. First, the ALJ found that implementation of the ban on smoking, while the union's request for assistance from the FSIP was pending, violated section 7116(a)(6)
 Second, HCFA argued that implementation of the smoking ban was mandated by a 'compelling need' to implement a DHHS regulation, which required the establishment of a smoke-free environment in all DHHS buildings. The ALJ concluded that HCFA's reliance on the regulation, which was issued subsequent to the parties' execution of the MOU, constituted a total repudiation of the MOU in violation of Section 7116(a)(7). The FLRA reviewed the DHHS regulation and determined that it does not serve a "compelling need." The FLRA's decision was affirmed by the D.C. Circuit Court. Department of Health and Human Services, Family Support Administration v. FLRA, 920 F.2d 45 (D.C.Cir.1990). These findings are not at issue in this appeal.
 
 
 [4]
 In support of its finding that the MOU did not authorize unilateral agency action, the ALJ noted that the MOU set forth no specific date for a ban on smoking. The ALJ found that the MOU did not constitute a waiver of the union's right to bargain over the smoking policy because the MOU authorized either party to reopen the MOU for further negotiations. Finally, the ALJ discredited HCFA's proffered construction of the MOU because it recognized its obligation to bargain when it offered to negotiate over the union's "wish list."